May it please the Court, my name is Colin Feynman. I represent Thomas Kriesel. Your Honors, I'd like to save three minutes for rebuttal. Very briefly as a threshold matter, in terms of the jurisdiction v. venue issue, I would just want to note for the Court that contrary to the government's assertion in its brief that there have been inconsistent rulings about whether Rule 41 contains a jurisdictional or venue provision, this Court, at least, has been consistent in saying that the jurisdiction for a Rule 41 motion rests on a district court's civil equitable jurisdiction. And moreover, this Court has never held that the federal rules, which are procedural, limit or grant jurisdiction. 41g contains a venue provision. The government did not object below, and that issue is waived. I'd like to direct a question or two on the merits. Yes, Your Honor. You're about to get to. What's the best case that you rely on for the position that these blood samples are property within the meaning of Rule 41? First of all, there's no case directly on point in terms of blood samples, Your Honor. And that's indicated in my brief. I would note that the government has not challenged the notion that it's property. The district court below found that Rule 41, a return of property motion, was the correct vehicle for the blood samples. And we do have some cases closely on point. I would refer the Court to the Raynard decision of this Court, 473 F. 3rd, 1023, in which a challenge to the DNA Act based upon the Commerce Clause, this Court noted, and it's not part of the holding, but noted that bodily samples and DNA are things of interstate commerce. Rule 41 itself, as well, Your Honor, in 41a2a, refers to property as including all tangible objects and information. Obviously, we're both concerned about the blood sample itself and the DNA information, the medical information that's contained in it. This Court has repeatedly recognized, most recently in the comprehensive drug testing case, that medical information and that type of data is property for purposes of a Rule 41 motion and that a person is aggrieved by deprivation of that property, even if there's no allegation that the government has actually misused it. Your client, as I understand it, in contrast to the district court level, on the appeal, your client's agreeing that the data remains in the data bank. The CODIS profile does. And that is what the Court and the government has repeatedly characterized as the genetic fingerprint based upon junk DNA that is purely an identifier. We are not challenging the government's right to retain the CODIS profile. That is allowed by the DNA Act. We lost our initial challenge in Creaseville 1 to whether the search in the first instance was proper. This appeal addresses only whether the excess samples that are not needed for the creation of the profile can be kept for the government when the DNA Act itself does not authorize the taking or retention of excess samples for anything other than creating the DNA profile itself that remains in CODIS. We also have no objection to the government searching the CODIS database if needed for investigatory purposes. I understand that. Well, let me say, assuming that the remaining samples come within Rule 41, they're some sort of property that invokes it, if it ends up coming down to a balancing of the interest of Creaseville in getting those samples back versus the interest of the government in keeping them, could you just trot through at whatever length you want what his interest is, that is, how he's disadvantaged if he doesn't get them back? Absolutely, Your Honor. I'm willing to address it. In light of the statutory restrictions on the government misusing them. Well, I would first note just in terms of the government's argument that the penalties prevent misuse. The penalties don't prevent misuse. They're a penalty for misuse. Right. And again, going back to comprehensive drug testing where the court said that a person is aggrieved by the deprivation of personal information, medical information, the fact that there may be a penalty was irrelevant to that analysis. The deprivation, the problem arises with the government retaining personal property or medical information and potentially having access to it whether or not there's a potential misuse. Now, in terms of the balancing test, and I'm happy to address that, although this is not really a Fourth Amendment challenge because we're not challenging the initial seizure or the code. It's a question of interpreting Rule 41. I realize that. It's not the constitutional issue, but at least the way I would approach it, to me it will end up coming, as one judge, it's going to come down to trying to understand your client's interest and the government's interest. Well, let me start with my client. I have the same question for them. What is your client's interest? He can't get the blood back in his system. Correct. And he's not saying get the CODIS entry out. So what is it exactly that he gains by getting it back, by getting the samples back, and what is it that he loses or that disadvantages him if he doesn't get it back? What his interest is in terms of the privacy, the private information that's contained in the blood. And I would quote, Your Honor, from the Kincaid concurrence that you filed and a couple of other opinions. In Kincaid, Your Honor wrote that unlike fingerprints or the functional equivalent of fingerprints, which is the CODIS profile, which we're not challenging, the DNA itself stores and reveals massive amounts of personal private data about that individual, and the advance of science promises to make stored DNA only more revealing in time. Your Honor wrote that in Kincaid in Note 3 at 842. I remember that. And I would also, the Court has done this in a wider context. In the Norman Blood Saw case at 135 F. 3rd, 1269, the Court wrote in the context of nonconsensual testing of medical samples from employees, one can think of few areas more personal and more likely to implicate privacy interests than that of one's health or genetic makeup from DNA. So the Court is, I'm sorry, Your Honor. So what I take is the government has its one sample, and it's done the state-of-the-art testing as to that sample to extract all the data it could at this time for DNA. And what Mr. Prezel wants is the other samples back so that as technology increases, and as we know it is, and as different tests arise, or I don't know, different uses arise in the future, that the government would be prevented from using the same blood sample. It would have to go and show probable cause to get its blood samples again, or it would have to be arrested for something else and be subject to the DNA extraction law again. Yes, Your Honor. In a nutshell, that's true. I would just note a couple of things to further hone that point. One is the DNA Act itself doesn't just allow general genetic testing. It's only to get that profile. Secondly, what is particularly troubling about the government's position is that it has taken the position that in order to go back in and reanalyze the excess samples, what they don't need for CODIS, they don't even need a warrant, and there are no constitutional implications to doing a reanalysis. They've taken that position at page 24 of their brief. That is very troubling because it is well established that any reanalysis that is unrelated to the only authorized purpose for obtaining that sample, creating the CODIS profile, does implicate the Fourth Amendment and in our view would require a warrant. But even more problematically than that, Mr. Creason would have no opportunity to challenge the reanalysis for any purpose. They're not going to notify him that they're conducting additional tests for whatever reason. He's not going to have an opportunity to go before the court to say that this is not a proper access or use of my medical information. And all that the government can cite is a comment to a Federal regulation. It's not even part of the record. It's not even a regulation on point that says they want to do this for quality assurance reasons and to protect Mr. Creason from misidentification. If we're looking at a balancing test, we have to remember that the court only authorized the DNA collection for very specific reasons that had to do with the supervision of people on probation. That was for the supervision, deterrence, and solving past crimes. The court has never endorsed this kind of quality assurance reason for maintaining people's genetic information. Moreover, whose interests are at stake? Mr. Creason is the one who's supposedly protected by this wanting to assure that there's no misidentification of his sample. If that situation arises or there is some sort of challenge to the accuracy of the CODIS profile, going back to that card is not going to resolve anything. If there was to be a challenge to the accuracy of the CODIS profile, I'm sure it would also have to do with chain of custody issues, the manner in which the profile was extracted. The government would still need to go to Mr. Creason and either ask for a blood sample or use the CODIS profile match as the basis to get a proper warrant. And in that sense, at that point, Mr. Creason could either agree to clear up his identity or misidentification, or the court would have an opportunity to review whether this was a proper opportunity to take another sample. Also note, John, there is nothing in the record to support this argument. As I indicated, the government is relying on a comment to the federal regulation that had nothing to do with this issue. The regulation that is cited in the government's brief at page 14 had to do with implementation of the Expanded DNA Act to arrestees and other certain categories of people. And the very same comment that the government cites is its only authority for doing this. It doesn't cite anything in the DNA Act. It doesn't rely on any of the exceptions in Rule 41, which are very limited. And it's also the government's burden under Rule 41 to show that an exception applies. And it doesn't cite any other authority. It cites a comment to a federal regulation that has nothing to do with this issue. Yet in that very same regulation, the Department of Justice stated that the chance of a misidentification of the CODIS profiled evidence is essentially minuscule because of the process and the fingerprinting that goes on with the CODIS profile itself. So this entire argument, if we're looking at the government's interest, getting back to Your Honor's question about the balance, we had a speculative argument about so-called quality assurance reasons that is not supported by any authority and is not supported by the record against Mr. Creasel's very substantial privacy rights. We have to remember his privacy rights have been fully restored. He's no longer under supervision. And what the government is essentially asking the court to do is to endorse its unilateral expansion of the DNA Act when the statute itself does not allow what they're doing here and they've been unable to cite any other authority for doing it. Now, Your Honors, just getting back to Rule 41 itself, because I really think this is the proper structure, as I know, the government is not seriously challenging that the blood sample is property, nor could it, do I believe, based on both the plain language of the rule itself and the authority that I've cited. There is a presumption of return of property under Mills, which is cited in my brief, and the government bears the burden of showing that an exception to Rule 41 allows it to retain the property at issue. There are only three exceptions in Rule 41, that Mr. Creasel is not entitled to possession of property, the government has not claimed that. That the property is forfeiture or contraband, the government has not claimed that. That the property is needed as evidence, the government has not claimed that. That is why they have tried to recast this entire issue as a balancing test, despite the fact that there's a Fourth Amendment issue in the background in terms of the implications that would arise from allowing the government to retain the sample, and it's the basis of my client's concern. But there's no search issue at this point. Right. So you wanted to say three minutes. You're down to two minutes and ten seconds. And I didn't realize the clock was running all the way down. Thank you for pointing that out, Judge. Okay. Thank you. May it please the Court. My name is Helen Bruner, and I'm here to represent the United States in this action. Let me begin, perhaps, with the question that counsel just raised about misidentification and the reason for confirming samples. Mr. Feynman, with due respect, has confused two issues. One is the misidentification of an individual based on a DNA profile itself, and the other is the question of confirmation. Although the CODIS database is as good and reliable as the government can make it, nonetheless, it is still a system that has human intervention. There can be miscoding of a sample. The purpose for the confirmation is to ensure that, in fact, the sample that has the identifying information in CODIS, that is to say the sample number and laboratory number that tracks back to Mr. Cresel's blood sample, is, in fact, a profile from Mr. Cresel, not some other individual. Could I ask you a question on the government's interest here? If you were forced to give him his blood back and if CODIS lit up on him in some other case, CODIS says Mr. Cresel is the guy, then could you get a warrant to draw his blood and test it further then? Your Honor, I believe that we could and we would. And, indeed, the government has never maintained that we would not seek further DNA from an individual. Let's call him Mr. Cresel now for purposes of this argument if there was a match. So why do you have to keep the blood on these cards for like a quality control check later before you would kind of go public with we arrest him or we want his blood? For several reasons, Your Honor. And it has to do not just with protecting Mr. Cresel to the extent that the profile did not actually, that was associated with his number, was not, in fact, his profile. It also means that investigative and judicial resources would be necessary in order for the government to learn that, in fact, that mistake had been made. Can I just ask you a follow-up on Judge Gould's question? Yes, Your Honor. Let's suppose the CODIS information on the one existing blood sample is faulty due to human error or whatever and it lights up on some crime in Montana and you identify Cresel. Don't you think Cresel would step forward and say, hey, I wasn't in Montana, I didn't do that, and you can take my blood? Wouldn't he have every incentive in the world to prove his innocence if he was, in fact, innocent? He might or he might not, depending on the charge and in any event. You think the natural human inclination would be to let yourself be convicted of a crime you didn't commit because you didn't want to give another blood sample? Certainly, Your Honor, but let me perhaps pose it this way. If Mr. Cresel's profile was a match to, let's say, a murder case in which he was in the state or in the general area. He knows whether he's guilty or innocent. He does, certainly. So he knows if you're basing your entire case on the data in CODIS, he knows whether he's guilty or innocent and whether he can disprove your case. That may well be, Your Honor, but it may also be that the government would, by that point, have arrested Mr. Cresel and detained Mr. Cresel or the court, I should say, would have entered a detention order based on the nature of the crime and Mr. Cresel's background before that analysis could be conducted. It's really not just for Mr. Cresel's benefit, for the benefit of being able to establish that the profile actually does match an individual, the correct individual, the resources of the government, the resources of the judiciary. All of those things come into play. But your argument comes down to, oh, well, if we made a mistake, we want to have these other ones on hand. It's all based on the government doing something in error that they would want to remedy. It's not ñ I mean, you've got his blood. You did the tests. But, Your Honor, if I might, the point that I'm attempting to make, and probably not very artfully, is it's not just that we made an error, but rather that it be remedied before an innocent person be accused or a guilty person. Not be brought to court as quickly. So are you planning on testing his blood to make sure your first CODIS test is correct? Your Honor, obviously there are a number of samples in the CODIS database. I think, and I last checked, just shy of 500,000 federal offenders. Have you tested his in particular? His blood sample has been tested for purposes of putting the profile in the database. Is it in the database? It was on its way to being in the database. I did not check that before I came to court today to see that it had, in fact, been placed. It had been run. It was being quality control checked before it was entered into the database. I do want to address one thing that arose in counsel's reply brief, and that is the question of the Quality Control Quality Assurance Program. That's actually mandated by statute. In 42 U.S.C. 141-31, there is a requirement that the FBI set out, adopt a board and that that board create a Quality Assurance Program for DNA databasing labs. And it is that Quality Assurance Program that requires retention of the sample. So there is, in fact, a statutory basis for it. And the statute, in fact, does also cover the question of Mr. Creasle's concerns because ---- Just on your last statement, the statute requires retention of the sample. Does it require retention of all six or just the one you did the testing on? Your Honor, so that I didn't mislead the Court, the Quality Assurance Program required by the statute requires the sample, not the statute itself. It's the same sample that you tested? No. It requires the other five as well? It requires maintenance of the sample to the extent that the sample was tested. The sample may or may not, that one sample may or may not be exhausted, depending on how much blood was on the card. That's why additional blood, well, there are six drops of blood, not just one on the sample card. Could I give you another question to think about? Certainly, Your Honor. Yeah. If we were to decide that Creasle gets his blood sample back, then obviously I've made no judgment about this and don't know what the panel will do, but I'm just trying to understand the interests of the government. If he gets his blood back, does the government have to give every other felon who served their time their blood back or only those who made a Rule 41 request? Well, Your Honor, we would obviously want to argue that it was limited to only those people who made the request, but I also think that if this Court were to find that Mr. Creasle is entitled to his blood sample back and that the equities in this case would weigh in favor of the defendant, I doubt that there would be any difference between Mr. Creasle's case and any other defendant's case. So I think, as a practical matter, we would be facing this decision in every request for return of samples. Can I just, again, on the interests, does the government think that there is a nefarious interest by defendants in the position of Mr. Creasle in wanting their samples back in any way? Is there a harm that could result from giving the samples back? I believe the harm, Your Honor, really is in the question of how good is the database. We want to rely on this database. It is certainly the best identification tool that we have. It not only inculpates defendants, but it exculpates defendants. It has that role as well. So that to the extent that we don't have the ability to go back, and I might also add, you know, where there might be an error, there is obviously not just an error in Mr. Creasle's sample. Somebody else's was mixed up. It's important for the government to be able to go back and establish what happened and correct whatever problems that caused any error to occur, however small they may be. But since we are relying on the reliability of this, even to the point of accusing someone, I think it's essential that it be as accurate as possible, both for the protection of defendants, both for government resources, both for judicial resources. And I think that is the overriding interest here. Are there any cases that are in the record or that you can point to where one of these quality control checks was done and it said, no, that earlier CODIS array of data was wrong or this isn't the guy or something? Your Honor, not in the record, no. In the record, and I will certainly acknowledge this, is less than stellar in terms of what occurred here. We didn't even have before the district court the correct date or the place where the sample was taken. So, no, not in the record, Your Honor. I have another question. This one is sort of out in the left field. But as I read the district court opinion, it was clear that at the district court the argument had been made, I want my CODIS entry erased. I want that and my blood. And then the elimination of the CODIS entry was abandoned on this appeal. Is this a case where the Rule 41 issue on getting the blood back is squarely before us so that we have to rule on that? Or would we have the option of sending that back to the district court to say when you got this it was conjoined with this other issue and we want to see an opinion from the district court on this as a standalone issue? Well, Your Honor, I think the question is one that I've been, it's certainly one that I've thought about because this case started out with Mr. Creasle asking for his profile and his sample based on his, I mean, very simply it says, based on the fact that I have finished my debt to society. The government responded really in a procedural basis, providing some arguments but most of the arguments based on the profile itself. More comes in on the reply and the district court in many respects didn't have all of the facts before it when it decided the issue. So I think to the extent that the court is concerned about the record not being sufficient and relying on the Federal Register notice for the government's position because that is in fact the published position of the government with respect to that, I would urge the court to remand it to the district court. Do you think he'd rule any other way? I don't know whether he would, but I think the questions, the district court. I mean, if he's already ruling in your favor on both of them and you put in this additional evidence that supports ruling in your favor on both of them, you think sending it back you're going to get any different result? He's going to rule in your favor on both of them? He may very well. He may not. I don't know. I'm sure Mr. Creasle's counsel would also put additional items in the record related to the profile. Are you saying remand on an open record? Or are you saying remand on the prior record? Your Honor, I think given the state of the record here, we would ask you to remand on an open record. But I do think that given the information in the Federal Register and the information in the statutes, particularly the privacy protections in the statute, it makes it very clear that any sample taken for purposes of this program can only be used for purposes of this program. So only for the CODIS database, only in judicial proceedings where otherwise admissible, only for purposes of criminal defense. Those reasons set forth in the statute continue to protect his sample. So while it's certainly of concern that DNA analysis may science improves all the time, those limitations are still there. And I might also note that in the Justice for All Act of 2004, there is, in fact, a provision that shows up as a note in 28 U.S.C. 531 that basically requires any change in the type of DNA testing done for the CODIS database. If the Justice Department wanted to change that testing, it's required by Congress to give a 180-day notice. So as I understand his argument, it's okay, we've got all this wonderfully protective statutory scheme, but all it does is penalize someone if they violate it, and it doesn't really protect CRECEL. If some rogue employee takes his DNA profile and posts it on the Internet or something at a time when current science can say that it means this, that, and the other thing about him, that they might go to jail, but he doesn't really have a remedy on his privacy interests. Your Honor, I guess I would simply say this. We have many things that are private that we supply to the government on a daily basis, whether it be in the context of taxes. I realize that medical information is particularly sensitive information, but that may also end up in the hands of the government in Medicare contexts. And there are penalties that apply. There are controls that are mandated with respect to DNA. The laboratories based on the quality assurance must be locked. There are all sorts of procedures to ensure that the access is limited. And beyond that, I don't know what else the government can do. I really don't like arguments that are based on the competence of government. I'm not even talking about the trustworthiness of employees. I'm just talking about competence, that you are over your time and you've made your point. I'll try to be brief, Your Honor. Just to pick up on this example that was given of taxes, when somebody provides personal information in a tax document, it is because the tax code authorizes the government to collect that information. The better example is if, for example, somebody is prosecuted for tax fraud and they seize their computers and all their documentation and the case is done and the person files a Rule 41 motion and says, I want my computers back, the government is giving you the functional equivalent and saying, we'd like to keep all that stuff because it may be useful to us in some manner in the future. That's exactly the kind of speculative, over-ended retention of private property, regardless of how sensitive the information that Rule 41 was designed to prevent. Now, Your Honor, I don't think we need a remand because the court, in Mr. Creaseville's view, can take at face value this quality assurance argument or misidentification argument that the government is promoting. It doesn't really change the outcome, no matter how much it may be amplified. Just because we want to have reliability in terms of our investigatory tools, we want fingerprints to be reliable. It doesn't mean the government gets to keep your hand or private documents. It may have additional fingerprints for future comparison to what's on the arrest card. Reliability is a virtue, but not at the expense of other very important values, such as Mr. Creaseville's privacy interests. In terms of the point that was made in terms of will every defendant want it back, I will admit that Mr. Creaseville is particularly sensitive to his privacy rights. We've been before the court on a number of occasions in this context. Rule 41 is always an option for a defendant who has these types of concerns. If the government is correct and most people will feel more comfortable, knowing that there can be additional analysis to prevent misidentification, I'm assured that most people then will want to leave their blood samples in the hands of the government. So I don't think that parade of horrors will arise. Very briefly, in terms of a statutory basis for this quality assurance, there is a requirement that there be quality assurance in terms of maintaining the CODIS profile, the fingerprint. But there is no statutory basis anywhere in the DNA Act or its enabling regulations that allows the government to take excess samples and retain them for these type of largely speculative purposes. And I would also just direct the court to the reply brief where, again, the Department of Justice has insisted that because of the processing of the samples and the CODIS and the loci that are used, the profile itself is inherently reliable without any additional quality assurance. Finally, Your Honor, just in terms of the record, the standard of review in this case is de novo for the court. The authority is cited for that in our brief. The Ramston case does not apply abuse of discretion standard. It says that we review the district court's interpretation of Rule 41e de novo. So the court has all the information, I believe, in conjunction with the supplemental record. All right. Thank you, counsel. Thank you very much, Your Honor. The case of U.S. v. Creso will be submitted. The court will be in recess.
judges: Hall, Wardlaw, Gould